UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

EILEEN M. MALAY,

                                       Plaintiff,

           -v.-                                    5:08-CV-00599
                                                      (NPM/GHL)

CITY OF SYRACUSE; GARY W.
MIGUEL, individually and in his official
capacity as Chief of Police for the
Syracuse City Police Department; JOHN
DOE 1, individually and in his official
capacity as a commanding officer in the
Syracuse City Police Department; and
JOHN DOES 2-10, individually and in
their official capacities as police officers
in the Syracuse City Police Department,

                                        Defendants.

─────────────────────────────────

APPEARANCES:                          OF COUNSEL:

FOR THE PLAINTIFF:
O'Hara, O'Connell & Ciotoli            Frank S. Gattuso
Attorneys for Plaintiff
7207 East Genesee Street
Fayetteville, New York 13066

FOR THE DEFENDANTS:
Rory McMahon, Corporation Counsel    James McGinty, Of Counsel
 for the City of Syracuse                  Jennifer Savion, Of Counsel
233 East Washington Street
300 City Hall
Syracuse, New York 13202

Neal P. McCurn, Senior District Judge

## *MEMORANDUM-DECISION and ORDER*

### *I.  Introduction*

Plaintiff, Eileen M. Malay ("Plaintiff"), commenced this action against defendants City of Syracuse ("City"); Gary Miguel, Chief of Police for the Syracuse Police Department ("Miguel"); John Doe 1, commanding officer ("Doe 1") and John Does 2 through 10, police officers ("Does 2 through 10") (collectively, "Defendants") alleging the violation of her rights under the United States and New York State Constitutions as well as certain tort claims under New York common law.  Presently before the court is a motion by Defendants to dismiss this action in its entirety for failure to state claims upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff opposes and Defendants reply.  Resolution of this motion is based on the papers submitted, without oral argument.

### *II.  Factual Background*

The court accepts, as it must, the following allegations in Plaintiff's complaint ("the Complaint") as true for purposes of deciding the present motion. See supra, at 5.

At the time of the events giving rise to this action, Plaintiff lived in a first-floor apartment at 303 Gere Avenue in Syracuse, New York.  Plaintiff's landlord lived in the apartment immediately adjacent to Plaintiff's apartment, also on the first floor of the residence.  On the afternoon of March 17, 2007, Plaintiff was home alone in her apartment when unbeknownst to her, police responded to a report of gunfire both inside and outside the residence at 303 Gere Avenue.  The police arrived at approximately 3:49 p.m.  Within approximately the first half hour after police arrived on the scene, Defendants learned from two separate sources

that Plaintiff was inside her apartment.  At some point, police proceeded to evacuate residents and neighbors of 303 Gere Avenue, not including Plaintiff.  At approximately 6:21 p.m., police, including defendants Does 2 through 10, initiated an assault upon the house while Plaintiff was still inside, and still unaware of the events taking place outside of, and in the apartment adjacent to her apartment.

At that time, Plaintiff was in her living room watching a movie, when the windows exploded inward, as someone was shooting explosive rounds into her apartment.  Plaintiff fled in total fear from room to room and to different hiding spaces within the apartment, in an attempt to avoid being shot.  Eventually, Plaintiff grabbed her cell phone and ran into the basement, at which time she began to notice the gas in her apartment.  Plaintiff experienced a fierce burning of her skin and mouth, blurring of her vision, and violent coughing.

At approximately 6:27 p.m., Plaintiff used her cell phone to call 911 and report the gunfire and gas being pumped into her apartment.  During the 911 call, Plaintiff was connected to a City of Syracuse police officer.  Plaintiff told the officer her location within the apartment, as well as the location of one of the doors to her apartment.  The officer instructed Plaintiff to remain inside the apartment until other officers could come and tell her when to leave.

At approximately 6:38 p.m., an officer pounded on Plaintiff's door and yelled to her to come out.  When Plaintiff opened the door, three officers were present.  One of the officers, yelled, "Come out now!" after which Plaintiff ran out of the apartment and into the street.  Without guidance from the officers, Plaintiff ran across the street toward a neighbor's house, exposing herself to potential gunfire from the assailant who remained inside the residence at 303 Gere Avenue.

When Plaintiff reached the middle of the street, she heard an officer yell, "No! No!  Run toward the van!"  After Plaintiff stopped running, she saw a police emergency van.  Plaintiff then began running toward the van, again completely exposed to the gunman.

Once inside the van, Plaintiff saw several officers.  Plaintiff was still suffering from the effects of the CS gas, including burning skin, mouth, lungs and throat as well as blurred vision, dizziness, labored breathing and coughing.  One of the officers suggested Plaintiff be looked at by an Emergency Medical Technician, but another officer replied, "No, I really need her to diagram the house right now."

Plaintiff was questioned by police officers for two and a half hours, and thereafter was placed in a police cruiser and was told to remain there in case she was needed for further information.  At no time was Plaintiff seen by any medical personnel, nor was she provided with any treatment for the exposure to CS gas.  Plaintiff was also not provided with a change of clothes.

At 9:00 p.m., Plaintiff was told her assistance was no longer needed, and she was allowed to call her son to come and pick her up at a nearby restaurant.  While an officer escorted Plaintiff to the restaurant, she was not offered a ride to the hospital nor was she advised to seek medical attention or given any information about the effects of CS gas exposure.  Plaintiff continues to suffer the effects of the events of March 17, 2007, including the physical, mental and emotional effects of the exposure to CS gas, as well as the loss of her personal items inside her apartment at 303 Gere Avenue.

### III.  Discussion

By the filing of the Complaint, Plaintiff purports to allege nine separate

causes of action, including four claims pursuant to 42 U.S.C. § 1983 as predicates to claims for violation of her federal constitutional rights, one claim for violation of her rights under the New York State Constitution, and four separate negligence claims under New York common law. Defendants seek dismissal of the entire Complaint for failure to state claims upon which relief may be granted.

### *A.  Legal Standard*

When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept the allegations of fact in the complaint as true, drawing all reasonable inferences in the plaintiff's favor. See World Religious Relief, Inc. v. Sirius Satellite Radio, Inc., No. 05-CV-8257, 2007 WL 2261549, at *1 (S.D.N.Y. Aug. 7, 2007) (quoting Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.1994)). In addition to the factual allegations in the complaint, the court may also consider "documents attached to the complaint as exhibits or incorporated by reference, [...] matters of which judicial notice might be taken, and [...] documents either in plaintiff[s'] possession or of which plaintiffs had knowledge and relied on in bringing suit." Muller-Paisner v. TIAA, 446 F.Supp.2d 221, 226-227 (S.D.N.Y.2006) (citing Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir.1993) (internal citations omitted)) (rev'd in part on other grounds, No. 06-4307-cv, 2008 WL 3842899 (2d Cir. Aug. 15, 2008). Thus, "the Court may only consider a document not appended to the complaint if the document is incorporated in [the complaint] by reference or is a document upon which [the complaint] solely relies and ... is integral to the complaint." Conte v. County of Nassau, No. 06-CV-4746, 2008 WL 905879, at *7 (E.D.N.Y. Mar. 31, 2008) (citing Roth v. Jennings, 489 F.3d 499, 509 (2d Cir.2007) (internal quotation

omitted)).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the complaint includes "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, — U.S. —, 129 S.Ct. 1937, 1949 (2009) (citing <u>Bell Atlantic</u>, 550 U.S. at 556, 127 S.Ct. at 1965). It is important to note that this "plausibility standard" still does not require a heightened pleading standard for civil rights claims. <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-58 (2d Cir.2007) (<u>rev'd on other grounds</u>, <u>Ashcroft</u>, — U.S. —, 129 S.Ct. at 1949). In accordance with this standard, the plaintiff is required, "at a bare minimum, . . . [to] provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" <u>Goldstein v. Pataki</u>, 516 F.3d 50, 56 -57 (2d Cir. 2008) (citing <u>ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007)) (quoting <u>Bell Atlantic</u>, 127 S.Ct. at 1965))).

As an initial matter, Defendants submit additional documents, attached as an exhibit to their reply papers, which they allege are incorporated by reference into

---

[1] By its opinion in <u>Bell Atlantic</u>, the Supreme Court abrogated the often-cited language of <u>Conley v. Gibson</u> "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. 544, 561, 127 S.Ct. 1955, 1968 (2007) (quoting <u>Conley</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)). In doing so, the Court found that <u>Conley</u> "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." <u>Id.</u>, at 563, 127 S.Ct. at 1969.

the Complaint.  Specifically, Defendants attach what appear to be partial segments of two police reports related to the activities on the day in question.  In their reply papers, Defendants argue that these police reports are "incorporated by reference to the exact times quoted in Plaintiff's complaint."  See Reply Mem. of Law in Support of Defs.' Mot. to Dismiss, at 7, Dkt. No. 12, citing Compl. ¶ 12, Dkt. No. 1.  The cited paragraph of the Complaint reads as follows:

> Upon information and belief, police arrived at 303 Gere Avenue at approximately 3:49 p.m.  Police then cordoned off the street and proceeded to evacuate residents and neighbors of 303 Gere Avenue, but not the Plaintiff.  At 6:21 p.m., police, including Defendants DOES 2-10, initiated an assault upon the house while Plaintiff remained inside, still unaware of what exactly was occurring outside of and in the apartment adjacent to her apartment.

Compl. ¶ 12.  Defendants' argument that Plaintiff's allegation in the Complaint of the specific times that certain events unfolded on the day in question somehow incorporates by reference into the Complaint the contents of police reports regarding those events is questionable and warrants no further discussion.  Accordingly, the contents of said exhibit will not be considered by the court in deciding the present motion.

The court also notes that in their moving papers, Defendants repeatedly reply on facts outside the Complaint in support of their arguments to dismiss the Complaint.  The court will, as it must, only consider facts alleged in the Complaint when deciding Defendants' motion.  See Noboa v. MSC Crociere S.p.A., No. 08-Civ.-2896, 2009 WL 1227451, at *2 (S.D.N.Y. May 5, 2009) (citing Roth v. Jennings, 489 F.3d 499, 509 (2d Cir.2007)).

### B.  Claims Pursuant to 42 U.S.C. § 1983

7

Defendants argue the § 1983 claims against them should be dismissed for a variety of reasons.  First, Defendants argue that all of Plaintiff's § 1983 claims should be dismissed because she fails to identify what federal rights she seeks to vindicate.  Next, Defendants argue that all claims against Miguel and Does 1 through 10 should be dismissed under the doctrine of qualified immunity. Defendants also argue that Plaintiff's failure to train and deliberate indifference claims against the City should be dismissed because she fails to allege the requisite state of mind.  Finally, Defendants argue that the presence of exigent circumstances on the day in question warrants dismissal of all of Plaintiff's § 1983 causes of action.

In addition, Defendants raise new arguments in their reply papers, which are not responsive to arguments raised by Plaintiff in her opposition papers. Defendants argue for the first time in their reply papers that all claims against them under the Fifth Amendment must be dismissed and that Plaintiff's § 1983 claim in Count II of the Complaint should be dismissed as against Doe 1 because he is not a final policy maker for the City.  The purpose of reply papers is to "address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party."  Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G., 215 F.3d 219, 226 -227 (2d Cir. 2000).  Accordingly, the court is within its discretion to disregard such arguments submitted with Defendant's reply papers. See Illinois Nat. Ins. Co. v. Banc One Acceptance Corp., No. 05-CV-1260, 2008 WL 5423262, at *6 (N.D.N.Y. Dec. 29, 2008) (citing Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir.1993) (holding that arguments cannot be made for the first time in reply papers)).  Nonetheless, because Plaintiff is not prejudiced by the court's determination as to either newly raised argument, the Court will exercise

8

its discretion to decide same.

To begin with, in order to state a claim pursuant to 42 U.S.C. § 1983 , a plaintiff must allege "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state ... law." Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005) (quoting Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920 (1980) (internal quotations omitted)). "Section 1983 is not itself a source of substantive rights[,] but merely provides a method for vindicating federal rights elsewhere conferred[.]" Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S.Ct. 2689 (1979)).

Here, in Count I of the Complaint, Plaintiff alleges that the City failed to train and supervise its employees in a variety of ways, which resulted in the deprivation of her constitutional liberty interests. See Compl. ¶¶ 35-36. Plaintiff also alleges the City promulgated an unconstitutional policy regarding the use of CS gas, which also resulted in the deprivation of her liberty and property interests. See id. Plaintiff further alleges the City's failure to train and supervise as well as its CS gas policy amounted to gross negligence and deliberate indifference to Plaintiff's constitutional rights. In Count II of the Complaint, Plaintiff alleges a § 1983 claim against the City based upon the actions of Miguel and Doe 1, both of whom acted as final policy makers for the City when they commenced the CS gas assault on the day in question. Plaintiff further alleges that the decision to commence the assault amounted to gross negligence and a deliberate indifference to Plaintiff's constitutional rights, when she was not evacuated prior to the assault, nor was she given medical treatment or advice to seek medical treatment after the assault. See id. ¶¶ 38-40. Plaintiff also alleges in Count III of the Complaint that

Miguel and Doe 1 are liable as individuals under a theory of supervisor liability in that they failed to instruct officers in a variety of ways in order to prevent the violation of her rights under the Fourteenth Amendment.  See id. ¶ 43 (a)-(f). Plaintiff claims that the direct participation of Miguel and Doe 1 in the events underlying this action, and in supervising subordinate police officers, amounted to gross negligence and a deliberate indifference to her constitutional rights.  See id. ¶ 44.  Finally, Plaintiff alleges in Count IV of the Complaint that Defendants collectively acted to carry out a CS gas assault on her home and then failed to provide her with medical care or advise her to seek medical care, in violation of her rights under the Fourth, Fifth and Fourteenth Amendments "to be secure in her person , papers and effects against unreasonable seizure; right to bodily integrity and personal integrity; to be free of excessive use of force and not to be deprived of life, liberty and property without due process of law."  ¶ 46.

As an initial matter, although Defendants fail to raise the issue in support of their motion, the "official capacity" claims against Miguel and Does 1-10 must be dismissed as duplicative because claims against a government employee in his official capacity are treated as a claim against the municipality.  See Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct.358 (1991).

Defendants' first argue that all of Plaintiff's § 1983 claims should be dismissed because she fails to identify what federal rights she seeks to vindicate. In opposition, Plaintiff contends that she has satisfied the pleading requirements set forth in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99 (1957).  Defendants reply that the proper standard is that which the Supreme Court set forth in Bell Atlantic v. Twombly, 550 U.S. 544, 127 S.Ct. 1955.  Defendants go on to argue in their reply papers that because Plaintiff "offers no concrete facts to support [her]

speculative allegations, . . . they do not rise to the level of plausibility set forth in
Bell Atlantic." Defs.' Reply Mem. of Law at 2, Dkt. No. 12. However, the
Supreme Court has reiterated that the liberal notice pleading standard under Rule 8
does not require specific facts be alleged, only that the defendant be given "fair
notice of what the . . . claim is and the grounds upon which it rests." Erickson v.
Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2000 (2007) (citing Bell Atlantic, 550 U.S.
544, 555, 127 S.Ct. 1955, 1964 (quoting Conley, 355 U.S. at 47, 78 S.Ct.)).

To be sure, Plaintiff has identified the federal rights she seeks to vindicate.
In Counts I and II, which are labeled as claims against the City, Plaintiff clearly
alleges that she has been deprived of her liberty and property interests due to the
deliberate indifference of the City and its policy-makers, Miguel and Doe 1. In
Count III, labeled as a claim against Miguel and Doe 1 in their individual
capacities as supervisors, Plaintiff clearly alleges a violation of her liberty interest
under the Fourteenth Amendment due to the direct participation by Miguel and
Doe 1 in the CS gas assault on her home. Finally, in Count IV, Plaintiff alleges
that the Defendants collectively violated her rights under the Fourth, Fifth[2] and
Fourteenth Amendments.

Plaintiff further states enough facts to render her claims plausible. A
municipal entity, such as the City here, may not liable pursuant to § 1983 under

---

[2] Defendants are correct that any claims against them pursuant to the Fifth Amendment
should be dismissed. "The Fifth Amendment, like all the other guaranties in the first eight
amendments, applies only to proceedings by the federal government[.]" Abbate v. United States,
359 U.S. 187, 194, 79 S.Ct. 666, 670 (U.S. 1959) (internal citation omitted). Accordingly,
where, as here, defendants are municipal, rather than federal entities and officials, all claims
against them pursuant to the Fifth Amendment must be dismissed. See Sylla v. City of New
York, No. 04-cv-5692, 2005 WL 3336460, at * 2 (E.D.N.Y. Dec. 8, 2005) (citing Public Utilities
Commission of District of Columbia v. Pollak, 343 U.S. 451, 461 (1952)).

the theory of *respondeat superior*, but may be liable where its employee acted pursuant to an official policy, custom, or practice of said entity. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694-95, 98 S.Ct. 2018, 2037-38 (1978); Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408 (2d Cir. 1990). Such a policy, custom or practice may "be inferred where the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." Patterson, 375 F.3d at 226 (quoting Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir. 1996)) (internal quotation marks omitted). Also, "[a]ctions by an individual with final decision-making authority in a municipality constitute official policy for purposes of a § 1983 claim." Anthony v. City of New York, 339 F.3d 129, 139 (2d Cir. 2003) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84, 106 S.Ct. 1292 (1986)). Thus, Plaintiff has clearly put Defendants on notice of a Monell claim against the City for failure to train and for the promulgation of the CS gas policy (Count I), and also for the acts of its policy makers (Count II).

Regarding Plaintiff's claims against Miguel and Does 1 through 10 in their individual capacities, in order to establish a § 1983 claim against a government official in his individual capacity, a plaintiff need only "show that the official, acting under color of state law, caused the deprivation of a federal right." Hafer, 502 U.S. at 25, 112 S.Ct. at 362 (quoting Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985)). The government official, for his part, may assert the personal immunity defense of qualified immunity. See id.

A prerequisite to an award of damages on a § 1983 claim against an individual is personal involvement in the alleged constitutional deprivation. See Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (citing Wright v. Smith, 21

12

F.3d 496, 501 (2d Cir.1994) (<u>abrogated on other grounds</u>, <u>Sandin v. Conner</u>, 515

U.S. 472, 115 S.Ct. 2293 (1995))).  A plaintiff may establish the personal

involvement of a defendant-supervisor by showing that he "(1) directly

participated in the violation, (2) failed to remedy the violation after being

informed of it by report or appeal, (3) created a policy or custom under which the

violation occurred, (4) was grossly negligent in supervising subordinates who

committed the violation, or (5) was deliberately indifferent to the rights of others

by failing to act on information that constitutional rights were being violated."

<u>Iqbal</u> , 490 F.3d at 152-53 (2d Cir. 2007) (<u>citing</u> <u>Colon v. Coughlin</u>, 58 F.3d 865,

873 (2d Cir.1995)).

Here, in Count III, Plaintiff clearly states a supervisory liability claim

against Miguel and Doe 1 as she alleges their personal involvement in deciding to

commence the CS gas assault on her home as well as their gross negligence in

failing to properly supervise the officers who carried out the assault.  Plaintiff

further recites a litany of failures on behalf of Miguel and Doe 1, which, if true,

would amount to gross negligence and deliberate indifference.

In Count IV, Plaintiff essentially alleges a Fourteenth Amendment

substantive due process claim and  Fourth Amendment unreasonable seizure and

excessive force claims against all Defendants based on their collective

involvement in the CS gas assault on her home and their failure to provide medical

assistance or advise her to seek same.

The Supreme Court has made clear that

all claims that law enforcement officers have used excessive
force-deadly or not-in the course of an arrest, investigatory stop, or
other 'seizure' of a free citizen should be analyzed under the Fourth
Amendment and its 'reasonableness' standard, rather than under a

> 'substantive due process' approach.  Because the Fourth Amendment
> provides an explicit textual source of constitutional protection against
> this sort of physically intrusive governmental conduct, that
> Amendment, not the more generalized notion of 'substantive due
> process,' must be the guide for analyzing these claims.

Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989).  The court

later went on to clarify that Graham

> does not hold that all constitutional claims relating to physically
> abusive government conduct must arise under either the Fourth or
> Eighth Amendments; rather, Graham simply requires that if a
> constitutional claim is covered by a specific constitutional provision,
> such as the Fourth or Eighth Amendment, the claim must be analyzed
> under the standard appropriate to that specific provision, not under
> the rubric of substantive due process.

U.S. v. Lanier, 520 U.S. 259, 272, n.7, 117 S.Ct. 1219, 1228 (1997).  Accordingly,

where a claim is "covered by" the Fourth Amendment, substantive due process

analysis is inappropriate.  County of Sacramento v. Lewis, 523 U.S. 833, 843, 118

S.Ct. 1708, 1715 (1998).  In County of Sacramento, for example, the Court held

that substantive due process was appropriate, because the underlying events giving

rise to the claim surrounded a police pursuit in attempting to seize a person, not an

actual search or seizure, which are the only events covered by the Fourth

Amendment.  See id., at 843-44, 118 S.Ct. at 1715.

Here, Defendants' use of CS gas on Plaintiff's residence may be deemed

covered by the Fourth Amendment.  See LaLonde v. County of Riverside, 204

F.3d 947, 960-61 (9th Cir. 2000) (Intentional exposure to toxic substances is an

application of physical force for Fourth Amendment purposes.).  Accordingly,

Defendants will be liable if their use of force was objectively unreasonable "in

light of the facts and circumstances confronting them, without regard to [their]

14

underlying intent or motivation." Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006) (quoting Graham, 490 U.S. at 397, 109 S.Ct. at 1872).

Defendants' failure to provide Plaintiff with, or advise her to seek medical treatment would not fall under either category of search or seizure, and accordingly would be more properly addressed under the Fourteenth Amendment right to substantive due process. The Supreme Court has emphasized "the core of the concept [of due process is] protection against arbitrary action" by government. County of Sacramento at 845, 118 S.Ct. at 1716. Executive government action is said to violate the substantive component of the Due Process Clause "only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." Id. at 847, 118 S.Ct. at 1717 (internal citation and quotation omitted). However, "[t]he simple lack of due care does not make out a violation of either the substantive or procedural aspects of the Due Process Clause[.]" Pabon v. Wright, 459 F.3d 241, 250 (2d Cir. 2006) (citations omitted).

Here, Plaintiff has alleged enough facts to allow the court to infer Defendants' liability on her Fourth and Fourteenth Amendment claims. Plaintiff alleges that Defendants were aware of her presence inside the residence before they commenced the CS gas assault, and that, once they exposed Plaintiff to the CS gas, they failed to either provide medical care or advise Plaintiff to seek medical care.

Defendants argue that the § 1983 claims should be dismissed due to the exigent circumstances which existed at the time of the events underlying this action. To be sure,

> [e]xigent circumstances, such as . . . when police encounter a
> situation calling for an immediate response, require that government

> actors make instant judgments that honor their competing obligations
> both to restore order and to act with restraint.  In such crises, even
> precipitate recklessness fails to inch close enough to harmful purpose
> to spark the shock that implicates the large concerns of the governors
> and the governed.

Pabon, 459 F.3d at 251 (citation and quotation omitted).  However, in support of

their argument, Defendants once again rely on facts outside of the complaint,

which are not properly considered when deciding, as here, a Rule 12(b)(6) motion

to dismiss.

Regarding Defendants' argument that Miguel and Does 1 through 10 are

entitled to qualified immunity, "the Second Circuit has declared that while '[a]

qualified immunity defense can be presented in a Rule 12(b)(6) motion ... the

defense faces a formidable hurdle when advanced on such a motion....

Specifically, a traditional qualified immunity defense will succeed at this stage

only if the facts supporting it appear on the face of the complaint.'" Fleming v.

State University of New York, 502 F.Supp.2d 324, 340 (E.D.N.Y. 2007) (quoting

McKenna v. Wright, 386 F.3d 432, 434, 436 (2d Cir.2004)).  Because Defendants

here rely on factual allegations which do not appear in the Complaint to support

their defense of qualified immunity, their motion to dismiss on the basis of said

defense is denied.

Defendants also allege that Plaintiff fails to state the requisite state of mind

in order to set forth a claim for failure to train and deliberate indifference in Count

I of the Complaint.  Defendants correctly note that municipal liability will attach

on such a claim "only where the failure to train amounts to deliberate indifference

to the rights of persons with whom the police come into contact." City of Canton

v. Harris, 489 U.S. 378, 388-389, 109 S.Ct. 1197, 1204-05 (1989).  Defendants

also correctly point out a municipality will only be held liable on such a claim "where a failure to train reflects a deliberate or conscious choice by a municipality[.]" Id., at 389, 109 S.Ct. at 1205.  However, in City of Canton, unlike here, the lower court denied a motion for judgment notwithstanding the verdict on the plaintiff's failure to train claim.  See id., at 382, 109 S.Ct., at 1201.  Here, where the court is considering a Rule 12(b)(6) motion to dismiss, it is assumed Plaintiff can satisfy the elements of his claim.  See Muhammad v. City of Peekskill, No. 06-CV-1899, 2008 WL 4452355, at *6 (S.D.N.Y. Sept. 30, 2008) (citing Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 130 n. 10 (2d Cir. 2004) ("It is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage, and therefore need only plead that the city's failure to train caused the constitutional violation.")).  As Plaintiff here has sufficiently pled the City's failure to train its officers, the issue of whether such failure stems from a deliberate or conscious choice by the City will be left to be resolved after discovery.

Defendants next argue in their reply papers that Count II should be dismissed as against Doe 1 because "[c]ommanding officers in the Syracuse Police department do not have authority whatsoever in policymaking decisions."  Defs.' Reply Mem. of Law, at 8, Dkt. No. 12.  To be sure, Count II is clearly stated as against the City only, albeit based in part upon Doe 1's final policy-making authority.  Nonetheless, where an individual is "responsible for establishing final governmental policy[,]" municipal liability will attach.  See Anthony, 339 F.3d at 139 (quoting Pembaur, 475 U.S. at 483, 106 S.Ct. 1292).  The Court of Appeals for the Second Circuit has applied the Pembaur standard to mean that "[w]here an official has final authority over significant matters involving the exercise of

17

discretion, the choices he makes represent government policy.  An official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." Anthony, 339 F.3d at 139 (quoting Rookard v. Health & Hosps. Corp., 710 F.2d 41, 45 (2d Cir. 1983). Accordingly, it would be improper for the court to decide whether or not Doe 1 meets the aforementioned definition of a final policy-maker at this pre-discovery stage of the litigation.

Accordingly, because Plaintiff has sufficiently pled facts to state § 1983 claims against the City, Miguel and Does 1 through 10, for violations of her rights under the Forth and Fourteenth Amendments, Defendants' motion to dismiss Counts I through IV of the Complaint is denied.

### C.  Claims under New York Law

#### 1.  Article I, Section 12 of the New York State Constitution

Defendants correctly argue that Plaintiff's claim under the New York State Constitution should be dismissed because she has an adequate federal remedy for violation of her state constitutional rights.  Accordingly, Plaintiff's claim under Article I, Section 12 of the New York Constitution, appearing in Count V of the Complaint, is dismissed.  See Li v. Aponte, No. 05-Civ.-6237, 2008 WL 4308127, at *11 (S.D.N.Y. Sept. 16, 2008) (citing Coakley v. Jaffe, 49 F.Supp.2d 615, 628-29 (S.D.N.Y. 1999). aff'd, 234 F.3d 1261 (2d Cir. 2000).

#### 2.  Negligence Claims

Regarding Plaintiff's New York common law claims for negligence, Defendants argue dismissal is warranted because Plaintiff may not maintain a claim for negligence against them where she also alleges claims based on Defendants' intentional conduct.  Alternatively, Defendants argue the court should

decline to exercise supplemental jurisdiction of Plaintiffs' state law claims once her § 1983 claims are dismissed.  Plaintiff oppose, correctly noting that pleading in the alternative is permitted by Rule 8 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8(d).  See United Magazine Co. v. Murdoch Magazines Distribution, Inc., No. 00-CV-3367, 2001 WL 1607039, at *5 (S.D.N.Y. Dec. 17, 2001).  In addition, because the court has denied Defendants' motion to dismiss the federal causes of action, it declines to dismiss the state causes of action for lack of supplemental jurisdiction.  Cf. Blakeman v. Walt Disney Co., 613 F.Supp.2d 288, 315 (E.D.N.Y. 2009).

## *IV.*    *Conclusion*

In accordance with the foregoing analysis it is ORDERED that the motion to dismiss filed by all defendants against plaintiff, see Dkt. No. 8, is GRANTED in part and DENIED in part, and it is further

ORDERED that all claims against defendants for violations of plaintiff's rights under the Fifth Amendment are DISMISSED; and it is further

ORDERED that all claims against Gary Miguel and John Does 1 through 10 in their official capacities are DISMISSED; and it is further

ORDERED that all claims against defendants for violations of plaintiff's rights under the New York State Constitution are DISMISSED; and it is further

ORDERED that the motion to dismiss filed by defendants against plaintiff is DENIED in all other respects.

IT IS SO ORDERED.

DATED:      July 14, 2009
            Syracuse, New York

_____
Neal P. McCurn
Senior  U.S. District Judge